Good morning, and may it please the Court. I'm Elizabeth Newman, representing Ms. Weaver. Your Honors, Belton creates an exception to the warrant requirement, not an entitlement, and it creates that exception because the police sometimes have to make split-second decisions during an arrest. But there was no split-second decision-making in this case with respect to the search of Ms. Weaver's car. And I would submit that in light of Justice Scalia's concurrence in Thornton, courts perhaps should be applying Belton somewhat less loosely than they have done in the past. Your Honors, I respect that Sgt. Hignight wanted three I think that's a fair way to characterize it. And I would submit that a search incident to an arrest is not an assemble-the-team sort of concept. It's a deliberate act. It has connotations almost of leisureliness. And so team assembly is really the antithesis of the kind of split-second decision-making that makes a search contemporaneous with an arrest. Sgt. Hignight's actions here created an intermission, a frozen period of 10 to 15 minutes between the arrest of Mr. Herron and the search of Ms. Weaver's car. Belton began, of course, in an effort to provide a bright-line workable rule for police in the field. It hasn't really turned out to be that way. And so I'd like to discuss the Court's latest iteration of what contemporaneous means, what incident to arrest actually is. And that's to be found, I believe, in this Court's decision in Smith. It's not an easy test really to articulate, but it appears to be a two-factor double-balancing test, the two factors being the circumstances of the arrest and the reason for the delay, and the double-balancing being the balancing between the relationship of those two factors and the reasonableness of the delay given the circumstances of the arrest. Your Honors, the circumstances of the arrest here were very straightforward. There was nothing unusual about the arrest of Mr. Herron that would have required this long, frozen, static period that preceded the search of the car. And so I would submit that in that respect, this case is very similar to the Vasey case, in which there was also a fairly long period that wasn't quite so static between the arrest of the defendant and the search of the car. Now in Vasey, of course, the period was somewhat longer, but on the other hand, the police were doing something relatively productive. They were asking the defendant for consent to search. They were asking him what on earth is in that bottle of pills that we can't really see that's on the floor of your car. They were asking him for information about his employment status so that they could verify his identity and his workplace. But here, as is clear from the record, Sergeant Hignight was standing on the curb doing nothing, waiting as everybody else was. So there was no split-second decision-making here at all. There was nothing really happening except that everyone was simply frozen in time. I believe the government argued in its brief that Vasey was justified as an inventory search rather than as a search incident to arrest. But that's not how the government tried to characterize the search or argue that it was legitimate when it came before this Court on appeal. When it came up on appeal, the government sought to justify it precisely as a search incident to arrest. And the Court disagreed, of course, saying that the search had not followed closely on the heels of the arrest. Or as the McLaughlin Court later put it, it wasn't one of a series of events closely connected in time to the arrest. And here we have the same situation. There was nothing following closely on the heels of Mr. Heron's arrest except everybody sitting for a fair period of time waiting for the third backup officer to arrive. There was nothing as a that everything that ever happens in the world can be considered to be a series of events. This was a kind of a glass jar intermission, a break, a freeze in the series of events, the connection between the arrest of Mr. Heron, who, of course, by this time had been taken from the car, searched, handcuffed, locked not only in a police car but in the locked police car, between all of that and then the search of Ms. Weaver's car. At no point I would also like to emphasize, at no point were the police concerned that Mr. Heron was a danger to them, as the police were perhaps in the Turner case or the Hudson case where it was necessary to bundle the defendant out of the room so that the room could be safely isolated. Officer Hignight testified that he did not consider Mr. Heron a threat once Mr. Heron, who incidentally, of course, had offered no resistance whatsoever and had been completely cooperative, was locked in the back of the car. And as for Ms. Weaver, the police don't appear really to have cared much who she was. They don't appear to have searched her. And they considered her, at least presumptively, ultimately free to go, at least until they conducted or completed the search of the car. So the arrest was complete. There was a freeze in the flow of events that lasted a substantial period of time. There was no productive police conduct between the arrest and the ultimate search. And for those reasons, Your Honors, unless the Court has questions, I would submit that reversal is required in this case, and I would reserve the balance of my time. Thank you, Your Honors. Very poetic presentation. Thank you very much, Your Honor. May it please the Court. Fred Rowley, Jr. for the Government. Most of the delay in this case resulted from the call for backup that Officer Hignight made. It was certainly reasonable for the officer to want backup there before he searched the car. There was the defendant and the juvenile who were outside of the car by the curb. Mr. Heron was arrested and in the squad car. And it was the officer's practice, he testified, to have a couple of officers there to watch him search the car because he would be looking for things inside the car and not able to see around him. And also to have another officer there to watch the car at that point taken out. And I don't think the defense really disputes that it's a reasonable practice to conduct the search safely. Once the officer called it... It would take three to conduct the search safely as opposed to two. Your Honor, I believe that Officer Hignight testified that he wanted one officer to be able to watch the former occupants of the vehicle and another officer to watch him search the car. As the Supreme Court has pointed out, these arrest situations are by nature volatile. There's quite a bit of uncertainty. And I think officers just want to have as many eyes as they can watching both the occupants of the car and the officers who are actually searching the car. What is the point of having someone to watch the officer search the car? Your Honor... In terms of safety? I mean... Yes, Your Honor. I don't know that Officer Hignight directly addressed that question in his testimony. But I think the notion is that the officer who's searching the car is underneath the dashboard. He's looking in the seat. He's not really looking around him and so is a little bit... is vulnerable. Sure, but doesn't that solve by the second officer? I mean, I just don't understand that the... It may or may not be of consequence in this case, but I don't understand the safety rationale for waiting for the third officer to watch him conduct the search. Your Honor, I think that the idea is just that there is... there is uncertainty. I mean, I suppose that there could be something in the car that the officer who's searching doesn't notice or, you know, perhaps somebody lunges toward the car. And I think that it's just a belt and suspenders approach. You have one person who's looking at the former occupants and then you have the other person or the other officer, I should say, who's watching the actual search take place. And I think it's just to have the entire area covered while this officer is searching the car. But again, I have to emphasize... Who's the officer supposed to be looking for that's searching the car? Your Honor, of course, under the Belton rule, just the way that the Supreme Court has formulated it, the officer doesn't need to have a specific concern that there might be a weapon that could be seized or that evidence would be reachable by the defendant. The officer, if the search is valid... I'm sorry, the arrest is valid and the search is roughly contemporaneous with the arrest, is permitted to go into the car and look for the weapons or contraband as a general matter. But again, just the way that the Court has formulated the test because it's prophylactic, and this Court has repeatedly recognized as recently as the Osife decision, that the concerns underlying the rule, and that is officer safety and the possibility that the occupant will destroy evidence, those concerns don't actually have to obtain in any particular case in order for the officer to search the car. Briefly, just returning to the roughly contemporaneous point, it's important to note that the actions that were undertaken by the officer in this case were directly related to the search. That is to say, they were in preparation for the search. What does Officer Hignight do? He first asks the defendant for consent. And why does he do that? He testified he thought that it would be better to have her cooperation. She wasn't the person under arrest. She was the driver of the car, so it made sense to ask her for permission. What's the next thing he does? He calls for backup, and the government submits that that was a reasonable thing to do. And both of those actions are really aimed at the search that's incident to arrest, and I believe that they bridge on the one hand the arrest, and on the other hand the search. And so it's appropriate to treat all of those events as a continuous sequence of actions for purposes of McLaughlin. And in that sense, the case is really distinguishable from Vasey. Not only is the amount of time in Vasey significantly longer, it's twice as long at least, but the officers in that case undertook actions that weren't directly related to the search. The interrogation of the defendant really had to do with suspicion of the defendant being involved in a drug offense. The defendant in Vasey was wanted on a drug warrant. The officer saw a bottle of pills inside the car and asked the defendant about the pills, and it was at that point that the defendant gave the officers information about his employer and why he had the pills, and gave the officers the contact information for his employer. That interrogation was not directly aimed at the search, and it was not preparation for the search in any way. And that action is properly treated, therefore, as kind of an intervening event. It really does break up the flow of actions from the arrest to the search. In that respect, the case is critically different from the facts here, where what the officer is doing is really preparing for the search and simply waiting for the backup to arrive. One other point about... So how long may an officer wait for backup to arrive? Your Honor, this court has noted that timing isn't the sole consideration. Right. Can it be an hour, two hours, half a day? The court noted in McLaughlin that there's no fixed outer limit for the number of minutes that may pass between an arrest and a valid warrantless search that is a contemporaneous incident of the arrest. Now, of course, as Vasey well illustrates, the amount of time may be so protracted that depending on what the officers do in that intervening period, it may be unreasonable to treat a search as being incident to an arrest. I mean, Vasey is a good illustration of a kind of situation where you really cannot treat the search as an incident. The officer knew that he was going to search that car and believed that he had authorization under Belton to do so. It's just the kind of situation that Belton contemplates where the officer, having arrested the occupant of a vehicle, understands that he can search it. And the only thing he sought to do was to search that car safely and to get the permission of the driver, who I'm sure the officer believed was the vehicle owner, although I don't think there's testimony to that in the record, I have to be clear. And that situation really is a continuous sequence of events, which is the test that this court set out in McLaughlin and recently reaffirmed in Smith. And it's important to consider in arrest if the events are a continuous sequence of events. And so the 15 minutes here that elapsed between the arrest and the search really isn't dispositive. The court has no further questions the government can submit. Thank you, Your Honor. I'd like to take issue with a couple of points that the government has just made. First, that the incidents in the Vasey case were not really related to the search, that the intervening events were not really, as the government put it, preparation for the search or really related to the search. And I don't think that that's exactly the case. I think that the events in that case can be characterized as related to the search to the extent that the events in this case can be characterized as related to the search. For example, in each case, the police officers asked for consent to search the car. That was a prominent aspect of the Vasey case. They did that here. And that's certainly preparation to search the car. They also no doubt wanted to buttress their arrest of the defendant in the Vasey case by confirming that he really was a drug trafficker. The reason they were asking about the contents of that bottle of vitamin supplements was that they suspected they might have, I would conjecture, additional information that he might supply to them if he confessed that it was actually crack cocaine in there. Well, then they would have all the more reason to go in and search the car. Also as to whether the search here was reasonable, I think it's undisputed that Officer Hignite knew from the very beginning that this is his protocol to have three people, three officers present when he conducts a search. He testified that this was his protocol, his typical procedure. And he could have called for backup at any time. It's not as though he was alone in dealing with this situation to begin with. He had Deputy Farwell with him almost from the very start. He didn't even approach the car in this case until Deputy Farwell had arrived in his patrol car. And finally, Your Honor, it's true that Belton exists in order to give the police the flexibility they need in what can be a volatile situation of split-second timing and ad hoc decision making in a volatile situation in the field. But when you look at the static quality of the occurrences in this case, you can see, I would submit, that there's nothing here that matches up to any of those criteria. There was nothing volatile. Officer Hignite testified that he didn't consider anyone in this case to be any sort of a threat to him. There was no split-second timing. There was no ad hoc decision making. Everyone was just sitting frozen. If he wanted to search the car at the end of that period, then he should have been required to seek a warrant if he could make out probable cause to get an arrest. And it's not a general entitlement that the police get to use any time they arrest someone under no matter what circumstances and no matter how long after the actual arrest the search takes place. Thank you, Your Honor.
judges: Pregerson, Noonan,thomas